277 So.2d 901

**Odell GILLILAND**

v.

**The STATE of Alabama.**

**SC 362.**

Supreme Court of Alabama.

May 17, 1973.

Hanson & Allen, Albertville, for appellant.

William J. Baxley, Atty. Gen., and George M. Van Tassel, Jr., Asst. Atty. Gen., for the State of Alabama.

FAULKNER, Justice.

Undercover agent Elverd Gosdin and Lamar Pritchett asked Odell Gilliland whether he had any pills. Gilliland stated:

"No, I don't, I don't have any on me. You might get some down at the truck stop. * * * If you can't get them up there, come back by the house; I should be there in about thirty or forty minutes."

Thirty minutes later, the duo came to Gilliland's house and bought six pills for $3.00, including five black amphetamine capsules.

Odell Gilliland was tried by jury, convicted of selling amphetamine, and sentenced to three years in the penitentiary. He appealed to the Alabama Court of Criminal Appeals, from whence the cause was transferred to this Court.

There is no dispute as to the facts. Appellant asserts seven purported errors of law: (1) Denial of a motion for change of venue on the grounds of prejudicial pretrial publicity; (2) undue restriction of the examination of prospective jurors; (3) a remark by the court during the trial, "You haven't shown entrapment anywhere so far"; (4) a variance between indictment and proof as to who bought the drugs; (5) improper comment by the district attorney in closing argument; (6) overruling of a motion for a new trial; and (7) refusal of an instruction that defendant could not be convicted on the uncorroborated testimony of the undercover agent.

■ A defendant in this State is entitled to have his trial removed to another county, if he cannot have a fair and impartial trial in the county in which the indictment is found. Title 15, § 267, Code of Alabama 1940, Recompiled 1958. Appellant argues that two weeks of newspaper, radio, and television publicity about a "mass crack-down" on "pushers" in his area made it imperative that his trial be switched to another county. In support of his contention, he states that two jurors in another case in Marshall County asked to be excused because they could not render a just verdict on marijuana charges.

■ Our statute provides that this Court's review of the trial court ruling is to be de novo, without any presumption in favor of that ruling. Title 15, § 267, supra. However, the burden was on the defendant to show to the trial court that a fair trial could not be expected. Welch v. State, 28 Ala.App. 273, 183 So. 879 (1938).

Let us proceed to examine the matter as if in the shoes of the trial judge.

■ The policy of our change of venue statute balances the inconvenience and administrative inefficiency of a change with the knowledge that certain crimes so arouse the public in a particular locality that a fair trial there is impossible. A study of the cases reveals that these crimes are invariably of a notorious or spectacular nature, involving violence to the person: specifically, murder and rape. Beecher v. State, 288 Ala. 1, 256 So.2d 154 (1971); Thompson v. State, 117 Ala. 67 (1897). Criminal activity in which no one is hurt or killed, while distasteful to the public, does not seem to arouse quite the same passions. An obscure sale of six pills for $3.00, such as we have here, appears to fall safely in the latter category.

Furthermore, it was admitted by defense counsel that none of the publicity about the "crack-down" on drug offenders related to the defendant; in fact, his name was never mentioned. In light of these factors, we think that defendant did not carry his burden and that the trial court's ruling denying a change of venue was correct. If an adverse public attitude to crime in general were held to mandate a change in venue, the venue would be bouncing around from now until the end of days, because there is an adverse public attitude towards crime in every county in Alabama.

During the selection of the jury one of the attorneys for the defendant, Mr. Allen, began to ask a series of questions of the first of more than fifty prospective jurors. The following dialogue then occurred:

"THE COURT: Just a minute, Mr. Allen. I hope you are not going to ask each member individually. If you are, I am going to have to require you to ask them as a whole.

"MR. ALLEN: If I may approach the bench, please. Yes, sir, that is my intent. The purpose behind it  .  .  .

"THE COURT: I would prohibit you from asking each one those questions individually. I will let you ask the group as a whole. If some one holds up his hand, you might question him further.

"MR. ALLEN: We take exception to the court's ruling."

■ Examination of jurors takes place "under the direction of the court." Code, Title 30, § 52. His rulings will not be disturbed unless constituting an abuse of discretion. Aaron v. State, 273 Ala. 337, 139 So.2d 309 (1961).

■ In light of the large amount of time required to individually examine more than fifty prospective jurors, and the availability of a satisfactory alternative method, that suggested by the judge, we find no abuse of discretion in his ruling in this case. McPhearson v. State, 271 Ala. 533, 125 So.2d 709 (1960).

■ At trial, over the objection of the State, the court permitted testimony as to other illegal drug activity, on defendant's contention that he could "show a connection in the defense of entrapment." In the middle of this testimony, the State objected again:

"MR. WILKES: I object to going into all of those minute details.

"THE COURT: Sustained. I don't believe it's material to this case.

"MR. HANSON: Your Honor, I believe we can establish a connection in the operations of the undercover agent in the defense of entrapment.

"THE COURT: You haven't shown entrapment any where so far. I'm not commenting on the evidence but with regard to this defendant; that's what we're trying."

There was no objection by appellant to the statement made by the court. There was no move by appellant to exclude the statement, nor any motion made to instruct the jury to disregard the statement. No

 

error appears on this point. Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958).

Appellant alleges a fatal variance between indictment and proof as to who bought the amphetamine, charging that Lamar Pritchett was the vendee, not Elverd Gosdin, the undercover agent mentioned in the indictment.

The record contradicts this claim. Gosdin testified as follows:

"A. * * * Lamar went to the door, knocked on the door. Mr. Gilliland came to the door, and Lamar had a short conversation with him; he came back and said 'he says he's got six Black Beauties he'll let you have for $3.' So I gave him $3 * * *. [H]e [defendant] handed him the bottle, and Lamar handed him $3 and walked back to me and gave me the bottle.

"Q. Where did Lamar get the $3?

"A. From me."

We think, from this record, that the defendant could be convicted of selling to Gosdin.

Much ado is made about a "prejudicial" and "sinister" remark made by the assistant district attorney in closing argument. We frankly do not know what the remark was, and the record does not tell us. Nothing is presented for review.

Appellant contends that his motion for a new trial should have been granted on the grounds that entrapment was established as a matter of law. We note that the entrapment issue was submitted to the jury with a legally correct charge thereon, and hold that the jury could conclude as it did. The statements of the defendant, e. g. "If you can't get them [pills] up there, come back by the house" hardly indicate a timid, law-abiding soul forced into crime by the overwhelming pressures of cruel and tricky law enforcement agents.

Appellant complains of refusal of a requested charge to the effect that his client could not be convicted by the uncorroborated testimony of the undercover agent, Mr. Gosdin. He invokes Title 15, § 307 of our Code, regarding uncorroborated accomplice testimony.

The undercover agent in this case was not an accomplice of the defendant. Brown v. State, 44 Ala.App. 135, 203 So.2d 700 (1967). He could not be indicted and convicted for the crime, either as principal or accessory. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). Furthermore, the agent's testimony was corroborated in this case by other officials to whom he transmitted the contraband.

We discover no error in the record. The judgment is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.